UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | Case No. 24-cr-110 (BAH) |
| v. : | |
| : | |
| ROBERT JONES, : | |
| KAREN JONES, : | |
| : | |
| Defendants. : | |

**GOVERNMENT'S SENTENCING MEMORANDUM**

The United States of America, by and through its attorney, the United States Attorney for the District of Columbia, respectfully submits this sentencing memorandum in connection with the above-captioned matter. For the reasons set forth herein, the government requests that this Court sentence both Defendant Robert Jones to 14 days' imprisonment with 12 months' supervised release to follow and Defendant Karen Jones to 21 days' imprisonment with 12 months' supervised release to follow. The government also requests that this Court impose 60 hours of community service, and, consistent with the plea agreement in this case, $500 in restitution on both defendants.

**I.     Introduction**

Defendants Robert Jones, 71, and Karen Jones, 66, participated in the January 6, 2021 attack on the United States Capitol—a violent attack that forced an interruption of Congress's certification of the 2020 Electoral College vote count, threatened the peaceful transfer of power after the 2020 Presidential election, injured more than one hundred police officers, and resulted in more than 2.9 million dollars in losses.[1]

---

[1] As of July 7, 2023, the approximate losses suffered as a result of the siege at the United States Capitol was $2,923,080.05. That amount reflects, among other things, damage to the United States Capitol building and grounds and certain costs borne by the United States Capitol Police. The Metropolitan Police Department ("MPD") also suffered losses as a result of January 6, 2021, and

1

The defendants pleaded guilty to violations of 18 U.S.C. § 1752(a)(1). The government's recommendation is supported by the fact that these codefendants (1) were among the first rioters to approach the Capitol on the east front, (2) as they did so, Karen Jones encouraged the crowd forward, (3) the Joneses observed the police line holding the crowd back on the East Central Stairs, (4) once the line fell, the Joneses entered the building and did not leave until they were directed to do so by police, staying a total of 27 minutes, and (5) Karen Jones gave a speech stating that she was proud that she was among the first rioters up the stairs on January 6.

The Court must also consider that the defendant's conduct on January 6, like the conduct of scores of other defendants, took place in the context of a large and violent riot that relied on numbers to overwhelm police, breach the Capitol, and disrupt the proceedings. But for his actions alongside so many others, the riot likely would have failed. Here, the facts and circumstances of the crime support a sentence of 14 days imprisonment for Robert Jones and 21 days imprisonment for Karen Jones with 12 months of supervised release for each defendant in this case.

II.     **Factual and Procedural Background**

*The January 6, 2021 Attack on the Capitol*

To avoid unnecessary exposition, the government refers to the general summary of the attack on the U.S. Capitol. *See* ECF No. 1.

---

is also a victim. MPD recently submitted a total of approximately $629,056 in restitution amounts, but the government has not yet included this number in our overall restitution summary ($2.9 million) as reflected in this memorandum. However, in consultation with individual MPD victim officers, the government has sought restitution based on a case-by-case evaluation.

*Defendants Robert and Karen Jones' Role in the January 6, 2021 Attack on the Capitol*
*The Charges and Plea Agreement*

On January 5, 2021, Robert and Karen Jones flew from Los Angeles, California, to Washington D.C.  The next morning, January 6, open source video shows that they attended a rally to protest the results of the 2020 Presidential Election at the Ellipse.  The Joneses, along with thousands of other rioters, then marched to the United States Capitol.

Robert and Karen Jones approached the Capitol from the east side.  They were among the first wave of people to approach the building from that direction.  Open source video shows Karen Jones actively encouraged others forward, while Robert Jones recorded with his cell phone.



*Fig. 1: A still photo from open source video of Karen and Robert Jones (red circles) approaching the US Capitol from the east.*

As the couple approached the East Central Steps, a line of police officers confronted the crowd. The police officers, who were in uniform, formed a physical barrier between the growing mob and the Capitol Building. The Joneses stood at the base of the stairs, near the front, and had a clear vantage point of the officers.



*Fig. 2 – A still photograph from CCTV surveillance video of Karen and Robert Jones (blue box) in front of a line of police officers on the East Central Stairs.*

The mob greatly outnumbered the police, and eventually broke through the police line, which left the East Central Stairs unprotected. Robert and Karen Jones took advantage of this break and charged up the stairs toward the Rotunda Doors. They waited outside as rioters breached the Rotunda Doors.



*Fig. 3 – A still photograph from open source video of Karen Jones and Robert Jones (red circles) waiting outside of the Rotunda Doors.*

At approximately 3:00 p.m., both Robert and Karen Jones entered the United States Capitol and proceeded toward the Rotunda. They remained in the Rotunda for ten minutes as they walked around and took photos.



*Fig. 4 – A still photo from CCTV surveillance video of Karen Jones and Robert Jones as they high five in the Rotunda.*

Around this time, a large group of police officers, both Metropolitan Police Department Officers ("MPD") and US Capitol Police, arrived in the Rotunda and began a coordinated effort to clear the area of rioters. A majority of the crowd in the Rotunda ignored police directives and refused to leave. In response, officers formed a human wall and physically pushed people from the area. Body worn camera from this time shows that an MPD officer ordered Karen Jones to leave and physically pushed her toward the exit.



*Fig. 5 – A still photo from body worn camera of Karen Jones (red circle) and defendant John Todd III (yellow circle), previously prosecuted under 22-cr-166 (BAH), being told to leave by MPD officers in the Rotunda.*

Karen and Robert Jones then walked to the vestibule between the Rotunda and the Rotunda Doors. They lingered in the area, talking to other rioters for approximately 15 minutes, before exiting the building at approximately 3:28 p.m. They were inside the building for approximately 27 minutes.

Once they exited, the Joneses remained on the Capitol Grounds. On the East Central Steps, Karen Jones encountered a woman with a microphone. Karen Jones took the microphone and

6

stated, "Hi, I'm Karen Jones. I'm from Santa Ynez, California – Home of the Reagan Ranch – and I'm very proud to be here. I was in the first wave up the stairs. I lucked out. Thank you to all the people who carried me in the crowd. Took a little pepper spray. I didn't think I'd ever be sprayed by cops in my own country. I support the police, but I would like everyone to please join me in saying the Pledge of Allegiance."



*Fig. 6 – A still photo from open source video of Karen Jones (blue box) on the East Central Steps shortly before addressing the crowd.*

On February 29, 2024, the United States charged Robert Jones and Karen Jones by a four-count Information with violating 18 U.S.C. 1752(a)(1) and (a)(2) and 40 U.S.C. 5104(e)(2)(D) and (e)(2)(G). ECF No. 17.  On May 30, 2024, pursuant to a plea agreement, Robert and Karen Jones each pleaded guilty to Count One of the Information, charging them with a violation of 18 U.S.C. § 1752(a)(1).  By plea agreement, the defendants agreed to pay $500 in restitution to the Architect of the Capitol.

### III.   Statutory Penalties

Robert and Karen Jones now face a sentencing for violating 18 U.S.C. § 1752(a)(1). As noted by the plea agreement and the U.S. Probation Office, the defendants face up to one year of

7

imprisonment and a fine of up to $100,000. They must also pay restitution under the terms of the plea agreement. *See* 18 U.S.C. § 3663(a)(3); *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

## IV. The Sentencing Guidelines and Guidelines Analysis

As the Supreme Court has instructed, the Court "should begin all sentencing proceedings by correctly calculating the applicable Guidelines range." *United States v. Gall*, 552 U.S. 38, 49 (2007). "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark" for determining a defendant's sentence. *Id.* at 49. The United States Sentencing Guidelines ("U.S.S.G." or "Guidelines") are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions" and are the "starting point and the initial benchmark" for sentencing. *Id.* at 49.

The government agrees with the Sentencing Guidelines calculations set forth in the PSRs.

| | |
|---|---|
| Base Offense Level (U.S.S.G. §2B2.3(a)) | +4 |
| Specific Offense Characteristics (U.S.S.G. §2B2.3(b)(1)(A)) | +2 |
| Acceptance of Responsibility (USSG §3E1.1(a)) | -2 |
| Zero Point Offender (USSG § 4C1.1(a)(1)-(9)) | -2 |
| Total Adjusted Offense Level | 2 |

*See* PSR at ¶¶ 43-52.

While the Government concedes that Section 4C1.1 applies to the defendants the Court should vary upward by two levels to account for the reduction under 4C1.1. An upward variance is necessary because the January 6 riot was a violent attack that threatened the lives of legislators and their staff, interrupted of the certification of the 2020 Electoral College vote count, did irrevocable harm to our nation's tradition of the peaceful transfer of power, caused more than $2.9 million in losses, and injured more than one hundred police officers. Every rioter, whether or not

they personally engaged in violence or personally threatened violence, contributed to this harm. I*See, e.g., United States v. Rivera*, 21-cr-60 (CKK), ECF No. 62 at 13 ("Just as heavy rains cause a flood in a field, each individual raindrop itself contributes to that flood. Only when all of the floodwaters subside is order restored to the field. The same idea applies in these circumstances. Many rioters collectively disrupted congressional proceedings and each individual rioters contributed to that disruption. Because [the defendant's] presence and conduct in part caused the continued interruption to Congressional proceedings, the court concludes that [the defendant] in fact impeded or disrupted the orderly conduct of Government business or official functions"). Thus the defendant's conduct caused a significant disruption to a vital governmental function, warranting an upward variance. *See United States v. Eicher*, No. 22-cr-038 (BAH), Sentc'g Hrg. Tr. at 48 (varying upward by two levels to offset the Section 4C1.1 reduction).

Although the provision took effect after January 6, 2021, the Sentencing Commission enacted § 4C1.1 based on recidivism data for offenders released in 2010. *See* U.S. SENT'G COMM'N, RECIDIVISM OF FEDERAL OFFENDERS RELEASED IN 2010 (2021), available at https://www.ussc.gov/research/research-reports/recidivism-federal-offenders-released-2010. Given the unprecedented nature of the Capitol attack, there is no reason to believe this historical data is predictive of recidivism for defendants who engaged in acts of political extremism on January 6. This is particularly so given the degree to which individuals, including defendants who have been sentenced, continue to propagate the same visceral sentiments which motivated the attack. *See, e.g.*, *United States v. Little*, No. 21-cr-315 (RCL), ECF No. 73 at 4 ("The Court is accustomed to defendants who refuse to accept that they did anything wrong. But in my thirty-seven years on the bench, I cannot recall a time when such meritless justifications criminal activity have gone mainstream.").

9

The U.S. Probation Office calculated Robert Jones' criminal history as a Category I. R. Jones PSR at ¶ 55. Accordingly, the U.S. Probation Office calculated Robert Jones' total adjusted offense level, after acceptance, at 2, and his corresponding Guidelines imprisonment range at zero to six months. R Jones PSR at ¶¶ 100. Robert Jones' plea agreement contains an agreed-upon Guidelines' calculation that mirrors the U.S. Probation Office's calculation.

The U.S. Probation Office calculated Karen Jones' criminal history as a Category I. K. Jones PSR at ¶ 55. Accordingly, the U.S. Probation Office calculated Robert Jones' total adjusted offense level, after acceptance, at 2, and his corresponding Guidelines imprisonment range at zero to six months. K Jones PSR at ¶¶ 102. Robert Jones' plea agreement contains an agreed-upon Guidelines' calculation that mirrors the U.S. Probation Office's calculation.

Here, while the Court must consider the § 3553 factors to fashion a just and appropriate sentence, the Guidelines unquestionably provide the most helpful benchmark. As this Court knows, the government has charged a considerable number of persons with crimes based on the January 6 riot. This includes hundreds of felonies and misdemeanors that will be subjected to Guidelines analysis. In order to reflect Congress's will—the same Congress that served as a backdrop to this criminal incursion—the Guidelines are a powerful driver of consistency and fairness.

V.   **Sentencing Factors Under 18 U.S.C. § 3553(a)**

In this misdemeanor case, sentencing is guided by 18 U.S.C. § 3553(a), which identifies the factors a court must consider in formulating the sentence. In this case, as described below, the Section 3553(a) factors weigh in favor of 14 days' imprisonment for Robert Jones, 21 days' imprisonment for Karen Jones, and 12 months' supervised release for each defendant.

A.   **The Nature and Circumstances of the Offense**

The attack on the U.S. Capitol on January 6 posed "a grave danger to our democracy." *United States v. Munchel*, 991 F.3d 1273, 1284 (D.C. Cir. 2021). The attack "endangered hundreds of federal officials in the Capitol complex," including lawmakers who "cowered under chairs while staffers blockaded themselves in offices, fearing physical attacks from the rioters." *United States v. Judd*, 21-cr-40, 2021 WL 6134590, at *5 (D.D.C. Dec. 28, 2021). While assessing the defendants' participation in that attack to fashion a just sentence, this Court should consider various aggravating and mitigating factors. Notably, for misdemeanor defendants like the Joneses, the absence of violent or destructive acts is not a mitigating factor. Had Robert or Karen Jones engaged in such conduct, they would have faced additional criminal charges.

Robert and Karen Jones were among the first group of rioters to approach the Capitol Building on the east side. They eagerly clamored toward the building: Karen Jones waved others forward and Robert Jones documented the scene. As they arrived at the East Central Steps, they noted the line of police officers who were greatly outnumbered by the growing crowd. As Karen Jones admitted in her speech, she stormed up those steps and "took a little pepper spray" on the way. The Joneses knew that use of the stairs or entry into the Capitol Building was prohibited. Nevertheless, they both entered.

At the time they entered, other rioters broke through the Rotunda Doors and multiple exterior windows to either side of the Rotunda Doors. Glass and debris were strewn around the ground and alarms sounded at the Doors.

In the Rotunda, police ordered Karen Jones to leave. Despite that, she and Robert lingered in the Rotunda's vestibule for approximately 15 minutes before leaving the building to give a speech on the East Central Steps. In that speech, Karen Jones did not express remorse, she did not call for peace, and she did not make any attempt to calm the violence around her. Instead, she told

the crowd she "lucked out" because she was one of the first people to go up the stairs. She also insisted that despite her actions to the contrary, she actually supported the police. She masked her behavior in a cloud of patriotism by leading the group in the Pledge of Allegiance.

Accordingly, the nature and the circumstances of this offense establish the clear need for a sentence of incarceration in this matter.

### B. Robert and Karen Jones' History and Characteristics

Unlike many criminal defendants who come before this Court, Robert Jones' personal history and characteristics reveal no significant history of mitigating factors. As set forth in the PSR, Robert Jones grew up in a stable household, (R Jones PSR ¶¶ 62-63), he married codefendant Karen Jones, (R Jones PSR ¶ 64), and he has the love and support of his family. (R Jones PSR ¶ 65). Robert Jones has an associate's degree, (R Jones PSR ¶ 80), and reports a long and stable employment history. (R Jones PSR ¶¶ 82-85). He reports serious recent medical conditions related to his heart, (R Jones PSR ¶¶ 70-71), but does not appear to suffer from substance abuse or mental health issues.

Karen Jones' presents similarly. Despite trauma in her childhood, (K Jones PSR ¶ 64), Karen Jones described her upbringing as "loving and supportive." K Jones PSR ¶ 63. She has three children, and resides with her husband Robert, in Santa Ynez, California. K Jones PSR ¶ 63. However, she has recently been providing childcare for her grandchildren in Texas. K Jones PSR ¶ 70. Karen Jones reports a steady work history, (K Jones PSR ¶¶ 83-88), participation in pro-social activities, (K Jones PSR ¶ 72), and no history of substance abuse or mental health issues. K Jones PSR ¶¶ 77-79.

In sum, there is nothing in either Robert nor Karen Jones' personal history or characteristics which mitigates their sentences under § 3553(a).

### C. The Need for the Sentence Imposed to Reflect the Seriousness of the Offense and Promote Respect for the Law

The attack on the U.S. Capitol building and grounds was an attack on the rule of law. As with the nature and circumstances of the offense, this factor supports a sentence of incarceration, as it will in most cases, including misdemeanor cases, arising out of the January 6 riot. *See United States v. Cronin*, 22-cr-233-ABJ, Tr. 06/09/23 at 20 ("We cannot ever act as if this was simply a political protest, simply an episode of trespassing in a federal building. What this was an attack on our democracy itself and an attack on the singular aspect of democracy that makes America America, and that's the peaceful transfer of power.")

### D. The Need for the Sentence to Afford Adequate Deterrence

Deterrence encompasses two goals: general deterrence, or the need to deter crime generally, and specific deterrence, or the need to protect the public from further crimes by this defendant. 18 U.S.C. § 3553(a)(2)(B-C), *United States v. Russell*, 600 F.3d 631, 637 (D.C. Cir. 2010).

*General Deterrence*

The need for general deterrence weighs heavily in favor of incarceration in nearly every case arising out of the violent riot at the Capitol. Indeed, general deterrence may be the most compelling reason to impose a sentence of incarceration. "Future would-be rioters must be deterred." (statement of Judge Nichols at sentencing, *United States v. Thomas Gallagher*, 1:21-CR-00041 Tr. 10/13/2021 at 37).

General deterrence is an important consideration because many of the rioters intended that their attack on the Capitol would disrupt, if not prevent, one of the most important democratic processes we have: the peaceful transfer of power to a newly elected President. There is possibly no greater factor that this Court must consider.

*Specific Deterrence*

Both Robert and Karen Jones have accepted responsibility by pleading guilty in this matter. However, given Karen Jones' statements on the East Central Steps, along with the other aggravating circumstances described above, specific deterrence should be a consideration here. Karen Jones proudly declared that she was with the first people who charged up the stairs toward the Rotunda Doors. She was equally proud to take pepper spray for her actions and despite stating that she supported the police, her behavior on January 6 was completely inconsistent with those words. Both Robert and Karen Jones were part of an unprecedented violent insurrection, the purpose of which was to stop the peaceful transition of democratic power. Their statements thus far show that they have not been deterred from committing such actions in the future.

### E. The Need to Avoid Unwarranted Sentencing Disparities

As the Court is aware, the government has charged hundreds of individuals for their roles in this one-of-a-kind assault on the Capitol, ranging from unlawful entry misdemeanors, such as in this case, to assault on police officers.[2] This Court must sentence Robert and Karen Jones based on their own conduct and relevant characteristics, but should give substantial weight to the context of his unlawful conduct: their participation in the January 6 riot.

The Joneses have pleaded guilty to Count 1 of the Information, charging them with a violation of 18 U.S.C. § 1752(a)(1). This offense is a Class A. 18 U.S.C. § 3559. The sentencing factors set forth in 18 U.S.C. § 3553(a), including "the need to avoid unwarranted sentence

---

[2] A routinely updated table providing additional information about the sentences imposed on other Capitol breach defendants is available here: https://www.justice.gov/usao-dc/capitol-breach-cases. To reveal that table, click on the link "SEE SENTENCES HANDED DOWN IN CAPITOL BREACH CASES." The table shows that imposition of the government's recommended sentence in this case would not result in an unwarranted sentencing disparity.

disparities among defendants with similar records who have been found guilty of similar conduct," 18 U.S.C. § 3553(a)(6), do apply, however.

Although all the other defendants discussed below participated in the Capitol breach on January 6, 2021, many salient differences explain the differing recommendations and sentences. While no previously sentenced case contains the same balance of aggravating and mitigating factors present here, the conduct in the following cases provide suitable comparisons to the relevant sentencing considerations in this case.

In considering the sentencing recommendation here, the Government examined two specific cases previously sentenced by this Court, that is: (1) *United States v. William Tryon*, 21-cr-420 (RBW); and (2) *United States v. James Wyman*, 23-cr-243 (RDM). In *Tryon*, the defendant approached the Memorial Doors, where he was stopped by police officers. When he continued to try to enter the Capitol, police officers pepper sprayed him. Tryon eventually entered the building and remained inside for approximately 5-8 minutes before police forced him out. After exiting, he took a bullhorn and made several statements to the crowds on the Capitol grounds including a statement to, "redress grievances" and he sang, "We're Not Gonna Take It." Tryon pled guilty to one count of 18 U.S.C. § 1752(a)(1) and Judge Walton imposed 50 days' imprisonment with 12 months' supervised release.

In *Wyman*, the defendant entered the Capitol building through the Senate Wing Doors, where he observed numerous signs that he should not be in the building, such as broken windows and debris. He paraded through the building for approximately 5 minutes and then entered the Rotunda. From the inside, Wyman observed a crowd of rioters pull the Rotunda Doors open, so that the crowds waiting outside could enter the building. Wyman then moved back into the Rotunda where he remained for approximately 35 minutes until police officers forced him to leave.

After he was directed to leave, Wyman remained in the Rotunda vestibule for approximately 10 minutes before he exited the building. Wyman pled guilty to one count of 18 U.S.C. § 1752(a)(1). Judge Moss imposed 30 days' imprisonment and 12 months' supervised release.

Similar to Tryon, the Joneses ignored police officers commands at multiple junctures. According to Karen Jones' statement, they too were pepper sprayed but nevertheless chose to force their way into the building. In this same way, both the Joneses behaved similarly to James Wyman once they made it into the building. They again ignored obvious signs that the should leave, and it was only once police officers physically confronted Karen Jones that she moved toward the exit. Even then, like Wyman, the Joneses lingered in the building, taking an extra 15 minutes to leave. Finally, once police officers forced her out, Karen Jones remained on the Capitol grounds and like William Tryon, she took up a microphone and used her platform to stand by her decision to breach the Capitol and to proudly declare that she was amongst the first people up the stairs of the building. The striking similarities between these cases warrant similar punishments.

In any event, the goal of minimizing unwarranted sentencing disparities in § 3553(a)(6) is "only one of several factors that must be weighted and balanced," and the degree of weight is "firmly committed to the discretion of the sentencing judge." *United States v. Coppola*, 671 F.3d 220, 254 (2d Cir. 2012). The § 3553(a) factors that this Court assesses are "open-ended," with the result that "different district courts may have distinct sentencing philosophies and may emphasize and weigh the individual § 3553(a) factors differently; and every sentencing decision involves its own set of facts and circumstances regarding the offense and the offender." *United States v. Gardellini*, 545 F.3d 1089, 1093 (D.C. Cir. 2008). "[D]ifferent district courts can and will sentence differently—differently from the Sentencing Guidelines range, differently from the sentence an

appellate court might have imposed, and differently from how other district courts might have sentenced that defendant." *Id*. at 1095.

## VI.     Restitution

The Victim and Witness Protection Act of 1982 ("VWPA"), Pub. L. No. 97-291 § 3579, 96 Stat. 1248 (now codified at 18 U.S.C. § 3663), "provides federal courts with discretionary authority to order restitution to victims of most federal crimes." *United States v. Papagno*, 639 F.3d 1093, 1096 (D.C. Cir. 2011); *see* 18 U.S.C. § 3663(a)(1)(A) (Title 18 offenses subject to restitution under the VWPA).[3] Generally, restitution under the VWPA must "be tied to the loss caused by the offense of conviction," *Hughey v. United States*, 495 U.S. 411, 418 (1990); identify a specific victim who is "directly and proximately harmed as a result of" the offense of conviction, 18 U.S.C. § 3663(a)(2); and is applied to costs such as the expenses associated with recovering from bodily injury, 18 U.S.C. § 3663(b). At the same time, the VWPA also authorizes a court to impose restitution "in any criminal case to the extent agreed to by the parties in a plea agreement." *See* 18 U.S.C. § 3663(a)(3). *United States v. Anderson*, 545 F.3d 1072, 1078-79 (D.C. Cir. 2008).

Those principles have straightforward application here. The parties agreed, as permitted under 18 U.S.C. § 3663(a)(3), that Robert and Karen Jones must pay $500 in restitution, which reflects in part the role the codefendants played in the riot on January 6.[4] As the plea agreement reflects, the riot at the United States Capitol had caused "approximately $2,923,080.05" in

---

[3] The Mandatory Victims Restitution Act, Pub. L. No. 104-132 § 204, 110 Stat. 1214 (codified at 18 U.S.C. § 3663A), "requires restitution in certain federal cases involving a subset of the crimes covered" in the VWPA, *Papagno*, 639 F.3d at 1096, including crimes of violence, "an offense against property … including any offense committed by fraud or deceit," "in which an identifiable victim or victims has suffered a physical injury or pecuniary loss." 18 U.S.C. § 3663A(c)(1).

[4] Unlike under the Sentencing Guidelines for which (as noted above) the government does not qualify as a victim, *see* U.S.S.G. § 3A1.2 cmt. n.1, the government or a governmental entity can be a "victim" for purposes of the VWPA. *See United States v. Emor*, 850 F. Supp.2d 176, 204 n.9 (D.D.C. 2012) (citations omitted).

damages, a figure based on loss estimates supplied by the Architect of the Capitol and other governmental agencies as of July 2023." *Id.* (As noted above in footnote 1, the amount of damages has since been updated by the Architect of the Capitol, USCP, and MPD.) The codefendant's restitution payment must be made to the Clerk of the Court, who will forward the payment to the Architect of the Capitol and other victim entities.

### VII. Fine

The codefendants' convictions for violations of 18 U.S.C. § 1752(a)(1) subject them to a statutory maximum fine of $100,000. *See* 18 U.S.C. § 3571(b). In determining whether to impose a fine, the sentencing court should consider the defendant's income, earning capacity, and financial resources. *See* 18 U.S.C. § 3572(a)(1); *See* U.S.S.G. § 5E1.2(d). The sentencing guidelines provide for a fine in all cases, except where the defendant establishes that he is unable to pay and is not likely to become able to pay any fine. U.S.S.G. § 5E1.2(a), (e) (2023).

The burden is on the defendant to show present and prospective inability to pay a fine. *See United States v. Gewin*, 471 F.3d 197, 203 (D.C. Cir. 2006) (explaining that "it makes good sense to burden a defendant who has apparently concealed assets" to prove that "he has no such assets and thus cannot pay the fine"); *United States v. Lombardo*, 35 F.3d 526, 528 (11th Cir. 1994).

Here, the defendant has not shown an inability to pay, thus pursuant to the considerations outlined in U.S.S.G. § 5E1.2(d), the Court has authority to impose a fine. § 5E1.2(a), (e). The guidelines fine range here is $200-$9,500. U.S.S.G. § 5E1.2(c).

### VIII. Conclusion

Sentencing requires the Court to carefully balance the § 3553(a) factors. Balancing these factors, the government recommends that this Court sentence Robert Jones to 14 days' imprisonment with 12 months' of supervised release to follow and Karen Jones to 21 days'

imprisonment with 12 months' of supervised release to follow. Such a sentence protects the community, promotes respect for the law, and deters future crime by imposing restrictions on Robert and Karen Jones' liberty as a consequence of their behavior, while recognizing their acceptance of responsibility for their crimes.

                            Respectfully submitted,

                            MATTHEW M. GRAVES
                            United States Attorney
                            D.C. Bar No. 481052

By:    s/ *Allison K. Ethen*
           Assistant United States Attorney
           United States Attorney's Office
           District of Columbia
           MN Bar: 0395353